**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CARL TATE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 08-CV-5664 |
| | ) | |
| TERRY L. MCCANN; RONALD J. | ) | |
| MEEK; ROGER E. WALKER; SGT. | ) | Hon. Robert M. Dow, Jr. |
| BALDWIN; LT. MICHAEL | ) | |
| BUCZKOWSKI; OFC. LESLIE | ) | |
| TURNER; KAREN RABIDEAU, | ) | |
| STATEVILLE PLACEMENT | ) | |
| ASSIGNMENT OFC.; VENITA | ) | |
| WRIGHT, ACTING STATEVILLE | ) | |
| HEALTH CARE ADMINISTRATOR; | ) | |
| DR. PARTHASARATHI GHOSH, | ) | |
| STATEVILLE MEDICAL DIRECTOR, | ) | |
| | ) | |
| Defendants. | | |

**AMENDED COMPLAINT**

Plaintiff Carl Tate, by his attorneys, brings this Amended Complaint against Defendants Terry L. McCann, Sgt. Baldwin, Lt. Michael Buczkowski, Officer Leslie Turner (collectively, "Stateville Officials"), Acting Stateville Health Care Administrator Venita Wright, Stateville Medical Director Dr. Parthasarathi Ghosh (collectively, the "Medical Staff Defendants"), Stateville Placement Assignment Officer Karen Rabideau, Ronald J. Meek, and Roger E. Walker and states as follows:

**SUMMARY OF THE ACTION**

1.　　This case concerns callous indifference to the safety and medical needs of a ward of the state. Defendants had a duty to protect Carl Tate from known dangers to his life and limb.

Despite having become aware of such dangers, Defendants ignored them and allowed Plaintiff Tate to fall victim to multiple assaults, each foreseeable and preventable, subjecting him to substantial physical injury and psychological trauma amounting to cruel and unusual punishment. After subjecting Mr. Tate to these violations, the Medical Staff Defendants compounded the injury by failing to provide Mr. Tate with adequate and timely medical care. In addition, Defendant Turner, acting upon improper and self-interested motives, retaliated against Mr. Tate for his attempt to employ the remedial prison grievance system, a step that the law requires Mr. Tate to take. Plaintiff Tate brings this Complaint pursuant to 42 U.S.C. § 1983 and the laws of the State of Illinois to redress the violations of his rights under the First, Eighth, and Fourteenth Amendments of the United States Constitution. Plaintiff Tate seeks compensatory and punitive damages from the Defendants; a judgment declaring the Defendants' acts unconstitutional; and a permanent injunction prohibiting Defendants from housing him with certain members of the Illinois Department of Corrections' ("IDOC") general population.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), and 1367(a).

3.      Venue is proper in the Northern District of Illinois under 28 U.S.C. § 1391(b) because at least one Defendant resides in this District and all of the events giving rise to Plaintiff's claims occurred in this District.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

4.      Plaintiff Tate has exhausted his administrative remedies by pursuing the IDOC grievance process with respect to the claims set forth in Counts I through IX.

## PARTIES

5.    Plaintiff Carl Tate is an inmate. He is currently housed at Pinckneyville Correctional Center and is a resident of Perry County, Illinois. At all times relevant to the allegations in this Complaint, Plaintiff Tate was housed at Stateville Correctional Center. He is an African-American male.

6.    Defendant Terry L. McCann was, at all times pertinent to the allegations in this Complaint, warden of the Stateville Correctional Center and responsible for the disposition of all grievances filed by the inmates of that facility. He has personal firsthand knowledge of the allegations in this Complaint. Defendant McCann is sued in his individual and official capacities.

7.    Defendant Roger E. Walker was, at all times pertinent to the allegations in this Complaint, Director of the Illinois Department of Corrections, responsible for the organization and supervision of all state-run correctional facilities in Illinois, and responsible for the final disposition of all inmate grievances. He has personal firsthand knowledge of the allegations in this Complaint. Defendant Walker is sued in his individual and official capacities.

8.    Defendant Ronald J. Meek was, at all times pertinent to the allegations in this Complaint, Deputy Director of District 4 of the Illinois Department of Corrections. He has personal firsthand knowledge of the allegations in this Complaint. Defendant Meek is sued in his individual and official capacities.

9.    Defendant Officer Leslie Turner was, at all times pertinent to the allegations in this Complaint, an Internal Affairs Officer at Stateville Correctional Center. He has personal firsthand knowledge of the allegations in this Complaint. Defendant Turner is sued in his individual capacity only.

10.     Defendant Sergeant Baldwin (first name unknown) was, at all times pertinent to the allegations in this Complaint, a correctional officer at Stateville Correctional Center.  He has personal firsthand knowledge of the allegations in this Complaint.  Defendant Baldwin is sued in his individual capacity only.

11.     Defendant Lieutenant Michael Buczkowski was, at all times pertinent to the allegations in this Complaint, a correctional officer at Stateville Correctional Center.  He has personal firsthand knowledge of the allegations in this Complaint.  Defendant Buczkowski is sued in his individual capacity only.

12.     Defendant Placement Assignment Officer Karen Rabideau approved all of Tate's cell assignments between August 3, 2006 and January 31, 2007, including Tate's assignments to share cells with inmates Toussant Daniels, Matthew Foley, and John Malinowski..  Upon information and belief, she has personal firsthand knowledge of the allegations in this Complaint.  Defendant Placement Assignment Officer Karen Rabideau is sued in her individual and official capacities.

13.     Defendant Dr. Parthasarathi Ghosh was, at all times pertinent to the allegations in this Complaint, one of the treating physicians at Stateville Correctional Center and its Medical Director.  Upon information and belief, he has personal firsthand knowledge of the allegations in this Complaint.  Dr. Ghosh is sued in his individual capacity only.

14.     Defendant Acting Health Care Administrator Venita Wright was, at all times pertinent to the allegations in this Complaint, fulfilling the responsibilities and duties of the Stateville Health Care Administrator and was responsible for receiving and acting upon all requests for medical care directed to the Health Care Unit Administrator at Stateville.  Upon

information and belief, she has personal firsthand knowledge of the allegations in this Complaint. Ms. Wright is sued in her individual capacity only.

## FACTUAL ALLEGATIONS

**I.      The Protective Custody Policy of Stateville Officials and Disrepair of Protective Custody Cells Placed Plaintiff Tate in Danger.**

15.     Stateville Correctional Center ("Stateville") is a primarily Level 1 maximum-security facility maintained by IDOC in Joliet, Illinois.

16.     Stateville generally houses general population inmates separately from those in protective custody. However, when the protective-custody house become overcrowded, certain inmates in protective custody are housed amidst general population inmates.

17.     Protective custody cells in the general-population area of Stateville are clearly marked with stickers, so that general population inmates know exactly where the protective custody inmates are housed. Members of the general population generally believe that protective custody inmates are all informants on other prisoners or sex offenders, thus making them targets for violence. Members of the general population openly threaten those housed in protective-custody cells.

18.     The placement of overflow protective-custody cells is such that a protective-custody inmate has to walk, without an escort, to a different gallery for yard, shower, visitation, or health-care services. This route takes a protected inmate through general population areas where general population inmates are often out of their cells for recreation or work, wielding brooms, mops, and other implements that could be used as weapons.

19.     While housed in an overflow protective custody cell, Plaintiff Tate would refuse showers and yard time for fear of being attacked by the general population inmates surrounding his cell.

20.      Furthermore, the protective custody overflow cells were in a dangerous state of disrepair.  Glass in the doors was missing, allowing inmates in the general population to toss hot water and other potentially dangerous items into the protective custody cells.  The arrangement of the protective-custody cells placed a sleeping inmate's head near the broken window, within stabbing distance of passer-by.  Food provided to protected inmates was delivered and prepared by general population inmates, some of them known gang members, who often put dangerous items or bodily fluids in the food.

## II.  Stateville Officials Left Plaintiff Tate to Fend for Himself Against Gang Member Cellmate Toussaint Daniels, Who Assaulted Him

21.      In 1998, Plaintiff Tate was convicted of murdering a man named Jodie Kelly. Both Mr. Tate and Mr. Kelly were members of the Conservative Vice Lords ("CVL").  Mr. Kelly, a "three-star branch elite," outranked Plaintiff Tate in the gang.  Killing a superior member of the gang earned Mr. Tate an immediate death sentence, to be executed by any member of the CVL.

22.      During the early stages of Plaintiff Tate's incarceration, IDOC was aware that Plaintiff Tate was endangered by members of the Conservative Vice Lords.  This danger was documented in his file.  Plaintiff Tate was "flagged" by Internal Affairs as someone who should not be housed with members of the Conservative Vice Lords.

23.      In 2003, Plaintiff Tate was removed from Stateville and sent to a different facility for his safety because Stateville houses members of the Conservative Vice Lords.

24.      On July 5, 2006, despite knowing of the danger to Plaintiff Tate's life posed by housing him with members of his former gang, IDOC returned Plaintiff Tate to Stateville.

25.      Almost immediately, on July 7, 2006, Plaintiff Tate wrote IDOC Director Roger E. Walker, Jr., requesting a transfer away from Stateville.  Plaintiff Tate informed Director

6

Walker that his life was in danger and would be threatened continually unless he was moved to a different facility.

26.     Because Director Walker did not respond to this emergency, Plaintiff Tate began writing letters to the governor about his unsafe situation at Stateville and his need for a transfer.

27.     On or around July 16, 2006, the governor's office forwarded Plaintiff Tate's letters to Director Walker.

28.     Although he was supposed to be in protective custody, Plaintiff Tate was placed in direct contact with members of the general population of Stateville, many of whom are members of the Conservative Vice Lords.

29.     In October 2006, Plaintiff Tate was assigned to share a cell with a member of the Conservative Vice Lords, Toussaint Daniels.

30.     Almost immediately after being placed with his cellmate Toussaint Daniels, Plaintiff Tate approached Defendants Sgt. Baldwin and Lt. Buczkowski and requested a different cell.   Plaintiff Tate specifically informed Defendants Baldwin and Buczkowski that he was classified in protective custody, was not supposed to be housed with general population inmates, and was being threatened by his cellmate, a member of the Conservative Vice Lords.   Plaintiff Tate explained that the Conservative Vice Lords had standing orders to kill him.   Plaintiff Tate arranged this meeting by sending Defendant Buczkowski a "kite" (note) via the gallery Corrections Officer.

31.     Defendants Baldwin and Buczkowski refused this request and informed Plaintiff Tate that they wouldn't move him unless he fought, instructing him to stop "snitching" and to learn how to fight.

32.     In early October, 2006, Plaintiff Tate wrote emergency grievances and letters in an attempt to be moved away from Toussaint Daniels.

33.     On October 11, 2006, just as he warned various prison officials, Plaintiff Tate was physically assaulted by his cellmate and Conservative Vice Lords member Toussaint Daniels, suffering several serious physical injuries.

### III.     Stateville Officials Abandoned Plaintiff Tate to Chronically Violent and Racially Motivated Cellmate Matthew Foley

34.     After being assaulted by Toussaint Daniels, Plaintiff Tate was assigned a new cellmate, Matthew Foley.

35.     On or around November 29, 2006, Plaintiff Tate informed Defendant Baldwin that his new cellmate, Matthew Foley, was threatening to kill him, as well as stealing and selling his property.  Baldwin told him to "stop snitching" and informed Plaintiff Tate that if he wanted to change cells, he must fight.

36.     Plaintiff Tate repeatedly reiterated his concerns to Defendant Baldwin until December 2006.

37.     During the month of November 2006, Plaintiff Tate filed grievances to alert prison officials to his dangerous situation of being housed with Matthew Foley, who had threatened his life.

38.     In December, Plaintiff Tate informed Defendant Buczkowski that Foley was stealing Mr. Tate's property and threatening his life.  Defendant Buczkowski responded that he hates "snitches" and that Plaintiff Tate should fight like a man.

39.     In that same month of December, Plaintiff Tate sent a letter to Director Walker renewing his request for a transfer or a truly protected cell, stating that his cellmate Foley was

threatening his life, and complaining that Defendants Turner, Baldwin, and Buczkowski were ignoring the danger and refusing to help him.

40.     Between 7:00 a.m. and 3:00 p.m. on December 27, 2006, Plaintiff Tate spoke to Defendant Turner, telling him that Mr. Tate feared for his life, that cellmate Matthew Foley was threatening to kill him because Mr. Tate had fought previously with one of Foley's white-power gang members; that other white-power gang members were yelling through the gallery that Foley should kill him; and that Plaintiff Tate came from protective custody and wasn't supposed to be housed with general population inmates.

41.     At that meeting, Defendant Turner responded that Plaintiff Tate wouldn't be moved from his cell, that Defendant Turner didn't care that Plaintiff Tate came from protective custody, and that Plaintiff Tate was bigger than Foley and should stop "being a coward" and running to Internal Affairs about his problems.

42.     After apprising Defendant Turner of the threats and danger posed by his cellmate, Plaintiff Tate was returned to his cell with Foley.

43.     Upon information and belief, Defendant Turner did not meet with or otherwise interview Foley at that time or conduct further investigation into whether Foley was a danger to Plaintiff Tate.

44.     Later on December 27, 2006, after meeting with Defendant Turner, Plaintiff Tate returned to his cell and was brutally assaulted by his cellmate, Matthew Foley.  Foley knocked Mr. Tate unconscious during the attack.   After Mr. Tate regained consciousness, Foley threatened his life and took more of his personal property.  Mr. Tate suffered a severely injured nose, a bruised eye, scrapes across his chest and shoulders and ongoing back pain as a result of the attack.

45.     The day after Foley assaulted him, Plaintiff Tate told various correctional officers at Stateville about the attack of the previous night, at least one of whom witnessed Mr. Tate's bruises

46.     On or around December 30, 2006, Defendant Turner called Foley for an interview, at which Foley admitted to assaulting Mr. Tate.

47.     Only after Plaintiff Tate suffered severe injuries was Matthew Foley removed from Mr. Tate's cell.

48.     On December 31, 2006, Defendant Turner met with Plaintiff Tate regarding Foley's attack and refused to document any of Mr. Tate's injuries.  At no time did Defendant Turner take pictures of Mr. Tate's injuries.  Defendant Turner also refused to take Mr. Tate's bloody shirt as evidence of the fight.

49.     Plaintiff Tate filed an inmate grievance regarding his attack by inmate Foley and subsequent related events.

## IV.     Stateville Officials Subjected Plaintiff Tate to the Risk of Violence and Rape by his Cellmate and Prior Assailant John Malinowski

50.     On January 10, 2007, Plaintiff Tate once again sought the protective custody he was supposed to be in, writing to Deputy Director of IDOC Ronald J. Meek.

51.     Because of his past difficulties getting any response from prison officials, Plaintiff Tate had his mother, Carol Page, attempt to contact IDOC officials.

52.     On January 26, 2007, Plaintiff Tate was finally moved into a protective custody cell.  His cellmate was John Malinowski.

53.     Malinowski was widely known as a member of the same white-supremacy gang as Plaintiff Tate's former cellmate and assailant, Matthew Foley, the Aryan Brotherhood.

Additionally, Foley and Malinowski were both widely known to hate members of other races and to be personal friends.

54.     On the very same day that IDOC saw fit to place Malinowski and Plaintiff Tate in the same cell, inmate Malinowski attacked Mr. Tate, choking him, slamming him on the floor, and threatening him with future harm.

55.     In January, 2007, Plaintiff Tate filed grievances to alert prison officials to his dangerous situation.

56.     Although Plaintiff Tate had been assaulted and threatened by Malinowski, and had filed an emergency grievance regarding his safety, Stateville Officials did not separate Mr. Tate from his assailant at that time pending review of his grievance.

57.     On information and belief, inmate Malinowski met with Defendant Turner on January 27, 2007.  At this meeting, Malinowski requested a one-man cell, telling Defendant Turner that he would beat, rape, or otherwise harm Plaintiff Tate or anyone else housed with him until he was celled alone.

58.     Malinowski repeated his threats against Plaintiff Tate or any other prospective cellmate to various Correctional Officers.

59.     Even after Malinowski's prior beating of Plaintiff Tate, his meeting with Defendant Turner, and his clearly communicated threats of repeated harm to Plaintiff Tate, Mr. Tate was not removed from his cell with Malinowski.

60.     On January 29, 2007, fearing that he would be beaten, raped, or killed by his cellmate, and surmising that nothing was being done to secure his safety, Plaintiff Tate made the claim that Malinowski had raped him, hoping to spur the until-then inactive Stateville Officials to protect him.

61.     Sometime after January 29, 2007, Defendant Turner called both Plaintiff Tate and Malinowski in to his office.  Plaintiff Tate took advantage of his first hearing with Defendant Turner since being beaten by, threatened by, and housed with his assailant, Malinowski.  Plaintiff Tate recounted Malinowski's prior assault on him and requested protection.  Defendant Turner replied that he didn't care if Malinowski beat up, raped, or killed Mr. Tate, noting that his paycheck did not depend on how well he protected Mr. Tate.

62.     After Defendant Turner had been told face-to-face of Malinowski's prior assault on Plaintiff Tate and Malinowski's repeated threats of violence and rape, Mr. Tate and Malinowski were placed back in their cell together.

**V.      Defendant Turner Retaliates against Plaintiff Tate for Availing Himself of Prison Grievance Procedures**

63.     On or around January 30, 2007, Plaintiff Tate met with Defendant Turner in his office to discuss Tate's request for protective custody.  At that meeting, Defendant Turner told Plaintiff Tate that because Plaintiff Tate filed a grievance against him and wrote a letter to the governor about Defendant Turner's indifference to Mr. Tate's safety, Defendant Turner intended to personally fight to have Mr. Tate's further requests for protective custody and transfer "shut down."

64.     Sometime after his January 30 meeting with Plaintiff Tate, Defendant Turner spoke with other prisoners at Stateville about Plaintiff Tate in an attempt to create trouble for Plaintiff Tate with the general population and the Conservative Vice Lords.

**VI.     Medical Staff Defendants Fail to Treat Plaintiff Tate's Injuries**

65.     The morning after Plaintiff Tate was attacked by Toussaint Daniels, October 12, 2006, Plaintiff Tate requested medical treatment from a nurse patrolling his gallery.  Plaintiff Tate described his attack and injuries.

66.     The gallery nurse failed to treat Mr. Tate's injuries, telling him that he must file a request to see the doctor.  The gallery nurse also failed to record the extent of Mr. Tate's injuries and to test Mr. Tate for a concussion or other serious medical condition requiring urgent care.

67.     That same night, October 12, 2006, Plaintiff Tate filed a request to see the prison doctor for treatment of his injuries.

68.     Plaintiff Tate continued to file requests but did not receive a response from any doctor, any nurse, or any other medical staff member at any time during the months of October, November, and December 2006.

69.     Compelled by the lack of treatment and response, Plaintiff Tate filed a prison grievance on November 27, 2006 informing prison officials that he was injured in the assault by Toussaint Daniels and that his requests for treatment had thus far been ignored.  The only relief requested was to be seen by a doctor.

70.     While awaiting medical treatment for the injuries caused by Toussaint Daniels, Plaintiff Tate fell victim to another cellmate, Matthew Foley, on December 27, 2006, suffering further significant injuries.

71.     After being assaulted by Matthew Foley, Plaintiff Tate informed Defendant Officer Turner of the attack and his need for medical attention.

72.     The first time Plaintiff Tate was treated for his injuries was January 9, 2007, almost three full months after his first injuries and more than a week after his further injuries. By the time he was seen by medical staff, several months after his first attack, his bruises had healed and the swelling in his jaw had subsided.

73.     January 9, 2007 was the first time Plaintiff Tate was tested for a concussion, despite having suffered blows to the head twice and having been knocked unconscious by Matthew Foley.

74.     Plaintiff Tate's injuries, in their original condition, were never documented.

75.     Plaintiff Tate pursued the inmate grievance process with respect to these denials of medical care.

## LEGAL CLAIMS

### Count I

### Claim Under 42 U.S.C. § 1983 for Violation of the Eighth Amendment
### (Against Defendants McCann, Turner, Baldwin, Buczkowski, Walker and Rabideau)

76.     Plaintiff Tate restates Paragraphs 1 through 75 as if fully set forth herein.

77.     By housing Plaintiff Tate with Toussaint Daniels, a known member of the gang Conservative Vice Lords, Placement Assignment Officer Karen Rabideau acted with deliberate indifference to the known and substantial risk to Plaintiff Tate of serious bodily injury and death. Because of Rabideau's reckless disregard for the known dangers to Plaintiff Tate, Plaintiff Tate suffered a violent assault at the hands of Toussaint Daniels, resulting in substantial bodily injury, physical pain, and emotional distress.

78.     Stateville Officials and Roger E. Walker acted with deliberate indifference to the substantial risk of serious harm posed to Plaintiff Tate by his cellmate and gang member Toussaint Daniels by ignoring Plaintiff Tate's repeated entreaties, in verbal and written form, to remove him from his dangerous situation.  Plaintiff Tate informed Stateville Officials and Roger E. Walker of the standing order within the Conservative Vice Lords to kill him and of his cellmate's affiliation with that same gang.  Plaintiff Tate informed Stateville Officials and Roger

14

E. Walker that he was supposed to be in protective custody and not housed among the general population of Stateville. Stateville Officials and Roger E. Walker recklessly disregarded these dangers to Plaintiff Tate, subjecting him to a violent assault at the hands of Toussaint Daniels, resulting in bodily injury, physical pain, and emotional distress.

79. The reckless disregard of Stateville Officials, Roger E. Walker, and Placement Assignment Officer Karen Rabideau, under color of state law and without justification, constituted deliberate indifference to an objectively serious and subjectively known danger posing a substantial risk of serious harm to Plaintiff Tate, and amounts to cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

WHEREFORE, Plaintiff Tate respectfully requests the following relief:

A. A permanent injunction barring IDOC from housing Plaintiff Tate in the same facility as members of the gang Conservative Vice Lords, or in the same cell with any inmate known to pose a threat to his safety;

B. Compensatory damages, in an amount to be determined, sufficient to compensate Plaintiff Tate for the deprivation of his constitutional right to be free from cruel and unusual punishment, including, but not limited to, the physical pain and emotional distress caused by such deprivation;

C. Punitive damages to sanction Defendants' deliberate indifference to Plaintiff Tate's physical safety and to deter Defendants and others from engaging in similarly unconstitutional conduct in the future;

D. An award of Plaintiff Tate's attorneys' fees pursuant to 42 U.S.C. § 1988; and

E. Any other relief which this Court may deem just and proper.

**Count II**

**Claim Under 42 U.S.C. § 1983 for Violation of the Eighth Amendment**
**(Against Defendants McCann, Turner, Baldwin, Buczkowski, Walker and Rabideau)**

80.     Plaintiff Tate restates Paragraphs 1 through 79 as if fully set forth herein.

81.     By placing Plaintiff Tate, an African-American and a protective custody inmate, in a cell with inmate Matthew Foley, a known member of a white-power gang and an inmate known to be extremely violent toward fellow inmates, Placement Assignment Officer Karen Rabideau acted with deliberate indifference to the known and substantial risk to Plaintiff Tate of serious bodily injury and death.  Because of Placement Assignment Officer Rabideau's reckless disregard for these known dangers to Plaintiff Tate, he suffered a violent assault and grave injuries at the hands of Matthew Foley, resulting in bodily injury, physical pain, and emotional distress.

82.     Stateville Officials and Roger E. Walker acted with deliberate indifference to the substantial risk of serious harm posed to Plaintiff Tate by his cellmate Matthew Foley by ignoring Plaintiff Tate's repeated entreaties, in verbal and written form, to remove him from his unsafe housing situation.  Plaintiff Tate informed Stateville Officials and Roger E. Walker that Foley was threatening him and stealing his personal property.  Stateville Officials and Roger E. Walker were aware of Matthew Foley's racially motivated gang affiliation and his past history of violence to inmates and prison staff.  Further, Plaintiff Tate informed Stateville Officials and Roger E. Walker that he was supposed to be in protective custody and not housed among the general population of Stateville.  Stateville Officials and Roger E. Walker recklessly disregarded

16

these dangers to Plaintiff Tate, subjecting him to a violent assault at the hands of Matthew Foley, resulting in bodily injury, physical pain, and emotional distress.

83.     The reckless disregard of Stateville Officials, Roger E. Walker, and Placement Assignment Officer Rabideau, under color of state law and without justification, constituted deliberate indifference to an objectively serious and subjectively known danger posing a substantial risk of serious harm to Plaintiff Tate, and amounts to cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

WHEREFORE, Plaintiff Tate respectfully requests the following relief:

A.     A permanent injunction prohibiting IDOC from housing Plaintiff Tate with members of the Aryan Brotherhood;

B.     Compensatory damages, in an amount to be determined, sufficient to compensate Plaintiff Tate for the deprivation of his constitutional right to be free from cruel and unusual punishment, including, but not limited to, the physical pain and emotional distress caused by such deprivation;

C.     Punitive damages to sanction Defendants' deliberate indifference to Plaintiff Tate's physical safety and to deter Defendants and others from engaging in similarly unconstitutional conduct in the future;

D.     An award of Plaintiff Tate's attorneys' fees pursuant to 42 U.S.C. § 1988; and

E.     Any other relief which this Court may deem just and proper.

## Count III

### Claim Under 42 U.S.C. § 1983 for Violation of the Eighth Amendment
### (Against Defendants McCann, Turner, Baldwin, Buczkowski, Walker and Rabideau)

84.     Plaintiff Tate restates Paragraphs 1 through 83 as if fully set forth herein.

85.     By placing Plaintiff Tate, an African-American, into a cell with inmate John Malinowski, a known member of a white-power gang and known friend of Matthew Foley, who had recently violently attacked Plaintiff Tate, Placement Assignment Officer Karen Rabideau

acted with deliberate indifference to the known and substantial risk to Plaintiff Tate of serious bodily injury and death. Because of Placement Assignment Officer Rabideau's reckless disregard for the known dangers to Plaintiff Tate, Plaintiff Tate suffered a violent assault at the hands of John Macinowksi, resulting in bodily injury, physical pain, and emotional distress.

86. Stateville Officials, Ronald J. Meek, and Roger E. Walker acted with deliberate indifference to the substantial risk of serious harm posed to Plaintiff Tate by his cellmate John Malinowski. Malinowski was known to belong to the same white-power gang as Matthew Foley, the Aryan Brotherhood. Stateville Officials, Ronald J. Meek, and Roger E. Walker ignored the danger posed by this racial and personal tension between the cellmates. Stateville Officials, Ronald J. Meek, and Roger E. Walker ignored Plaintiff Tate's repeated entreaties, in verbal and written form, to remove him from his cell with Malinowski. Even after Malinowski assaulted Plaintiff Tate a first time and threatened to do so again, Stateville Officials, Ronald J. Meek, and Roger E. Walker ignored the danger to Plaintiff Tate and kept the two celled together. Stateville Officials, Ronald J. Meek, and Roger E. Walker recklessly disregarded the dangers to Plaintiff Tate, subjecting him to a violent assault at the hands of John Malinowski, resulting in bodily injury, physical pain, and emotional distress.

87. The reckless disregard of Stateville Officials, Ronald J. Meek, Roger E. Walker, and Placement Assignment Officer Rabideau, under color of state law and without justification, constituted deliberate indifference to an objectively serious and subjectively known danger posing a substantial risk of serious harm to Plaintiff Tate, and amounts to cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

WHEREFORE, Plaintiff Tate respectfully requests the following relief:

A.     A permanent injunction prohibiting IDOC from housing Plaintiff Tate with members of the Aryan Brotherhood;

B.     Compensatory damages, in an amount to be determined, sufficient to compensate Plaintiff Tate for the deprivation of his constitutional right to be free from cruel and unusual punishment, including, but not limited to, the physical pain and emotional distress caused by such deprivation;

C.     Punitive damages to sanction Defendants' deliberate indifference to Plaintiff Tate's physical safety and to deter Defendants and others from engaging in similarly unconstitutional conduct in the future;

D.     An award of Plaintiff Tate's attorneys' fees pursuant to 42 U.S.C. § 1988; and

E.     Any other relief which this Court may deem just and proper.

## Count IV

### Claim Under 42 U.S.C. § 1983 for Violation of the Eighth Amendment
### (Against Medical Staff Defendants)

88.     Plaintiff Tate restates Paragraphs 1 through 87 as if fully set forth herein.

89.     Medical Staff Defendants intentionally or recklessly failed to provide Plaintiff Tate with adequate medical care, failing to treat his physical injuries for months or weeks after their occurrence, wantonly inflicting pain upon Mr. Tate and subjecting him to an unreasonable danger of complications from untreated conditions. Dr. Ghosh was the Stateville Medical Director during the relevant time period, was on duty the date Mr. Tate made his first request for medical treatment, and on information and belief was informed of Tate's request for medical treatment, yet Dr. Ghosh failed to schedule Mr. Tate for timely medical examination and/or treatment, instead condemning him to suffer the healing process unaided and at risk of potential complications from untreated injuries, the extent of which was entirely unknown to the medical staff. Acting Health Care Administrator Venita Wright, a supervisory official placed on actual

notice of Mr. Tate's untreated condition by Mr. Tate himself, intentionally and/or recklessly disregarded the needs of Plaintiff Tate and ignored his repeated requests for help.

90.    The reckless disregard of Medical Staff Defendants to Plaintiff Tate's serious medical needs, under color of state law and without justification, constituted deliberate indifference to an objectively serious and subjectively known danger posing a substantial risk of serious harm to Plaintiff Tate, and amounts to cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

WHEREFORE, Plaintiff Tate respectfully requests the following relief:

A.    Compensatory damages to compensate Plaintiff Tate for the deprivation of his rights, including, but not limited to, the physical pain and emotional distress caused by such deprivation;

B.    Compensatory damages, in an amount to be determined, sufficient to compensate Plaintiff Tate for the deprivation of his constitutional right to be free from cruel and unusual punishment, including, but not limited to, the physical pain and emotional distress caused by such deprivation;

C.    Punitive damages to sanction Defendants' deliberate indifference to Plaintiff Tate's physical safety and to deter Defendants and others from engaging in similarly unconstitutional conduct in the future;

D.    any other relief which this Court may deem just and proper.

### Count V

### Claim Under 42 U.S.C. § 1983 for Violation of the Eighth Amendment
### (Against Defendants McCann and Walker)

91.    Plaintiff Tate restates Paragraphs 1 through 90 as if fully set forth herein.

92.    Defendants Terry L. McCann and Roger E. Walker, policy-making officials responsible for the administration, upkeep, and functioning of Stateville Correctional Center, wantonly and recklessly placed certain protective-custody inmates at Stateville, including Plaintiff Tate, in unreasonably dangerous conditions.  As a protective-custody inmate assigned to

F-House, Plaintiff Tate was placed in direct contact with general population inmates and made the target of derision and physical threat. Defendants McCann and Walker exercised their discretion to house protected and general population inmates in the same section of the prison. This forced protected inmates, including Mr. Tate, seeking basic services and human needs— such as exercise and showers—to brave the potential for physical abuse without an escort, and maintained protected cells in such a way as to advertise the status of their inhabitants to those who would do them harm. Further, Defendants McCann and Walker failed to make these protected cells safe from even the most rudimentary of physical attacks from the outside.

93.  These dangerous conditions caused Plaintiff Tate to forgo his constitutionally protected rights to basic human needs, and to suffer emotional distress. Defendants McCann and Walker thus subjected Plaintiff Tate to unreasonably and unnecessarily dangerous conditions, constituting cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

94.  The reckless disregard of Defendants McCann and Walker to Plaintiff Tate's safety, under color of state law and without justification, constituted deliberate indifference to an objectively serious and subjectively known danger posing a substantial risk of serious harm, and amounts to cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

WHEREFORE, Plaintiff Tate respectfully requests the following relief:

A.  Compensatory damages, in an amount to be determined, to sufficiently compensate Plaintiff Tate for the deprivation of his right to be free from cruel and unusual punishment;

B.  Punitive damages to sanction the named Defendants and to deter Defendants and others from engaging in similarly unconstitutional conduct in the future;

C.  An award of Plaintiff Tate's attorneys' fees pursuant to 42 U.S.C. § 1988; and

D.     Any other relief which this Court may deem just and proper.

## Count VI

### Claim Under 42 U.S.C. § 1983 for Denial of Due Process (Fourteenth Amendment)
### (Against Defendants McCann, Turner, Baldwin, Buczkowski and Walker)

95.     Plaintiff Tate restates Paragraphs 1 through 94 as if fully set forth herein.

96.     Stateville Officials repeatedly discouraged Plaintiff Tate from using prison grievance procedures to gain safety and security in the face of demonstrable threats and violence, telling him to "stop snitching," to "fight like a man," and to stop going to Internal Affairs with his problems.

97.     Defendant McCann, as Chief Administrative Officer of Stateville, and Defendant Walker, as Director of IDOC, are responsible for the administration of the prison's grievance procedures.  Despite this duty, both failed to respond to multiple requests and complaints lodged by Plaintiff Tate, both within and without the prison grievance system, in violation of several provisions of the administrative rules governing IDOC, such as 20 Ill. Admin. Code §§ 504.830, 504.840, and 504.850.

98.     In addition, Defendant Turner refused to document and report violence done to Plaintiff Tate, in violation of the Illinois Administrative Code sections setting out rules for the handling of prison incidents, including but not limited to 20 Ill. Admin. Code § 112.30.

99.     These actions and inactions by the named defendants constitute denials of procedural due process to Plaintiff Turner, guaranteed to him by the Fourteenth Amendment to the Constitution and 42 U.S.C. § 1983.

WHEREFORE, Plaintiff Tate respectfully requests the following relief:

A.      Compensatory damages, in an amount to be determined, sufficient to compensate Plaintiff Tate for the deprivation of his right to procedural due process;

B.      Punitive damages to sanction Defendant Turner's retaliation and to deter Defendants and others from engaging in similarly unconstitutional conduct in the future;

C.      An award of Plaintiff Tate's attorneys' fees pursuant to 42 U.S.C. § 1988; and

D.      Any other relief which this Court may deem just and proper.

## Count VII

### Claim Under 42 U.S.C. § 1983 for Retaliation in Violation of the First Amendment (Against Defendant Turner)

100.    Plaintiff Tate restates Paragraphs 1 through 99 as if fully set forth herein.

101.    Plaintiff Tate exercised his constitutionally protected right to file grievances for the redress of injuries and wrongs experienced while in the custody of IDOC.  Certain grievances filed by Mr. Tate on or around January 30, 2007 sought redress of Defendant Turner's deliberate indifference to Mr. Tate's safety and well-being, as well as the lack of attention and efficacy of certain IDOC officials in dealing with dangers to Mr. Tate, despite repeated requests.  This lack of attention and deliberate indifference is a matter of public concern.

102.    Because these grievances created a record of Defendant Turner's unconstitutional and illegal acts, Defendant Turner, motivated entirely by self-interest, retaliated against Plaintiff Tate by using his official influence to attempt to thwart Plaintiff Tate's requests for protection, and fomenting discord between Plaintiff Tate and the Conservative Vice Lords, a gang in the prison that had previously targeted Mr. Tate for violence.  Plaintiff Tate's filing of prison grievances constituted a substantial motivating factor for Defendant Turner's retaliation, which

violated Plaintiff Tate's rights under the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

WHEREFORE, Plaintiff Tate respectfully requests the following relief:

A.    Compensatory damages, in an amount to be determined, to sufficiently compensate Plaintiff Tate for the deprivation of his rights;

B.    Punitive damages to sanction Defendant Turner's retaliation and to deter Defendants and others from engaging in similarly unconstitutional conduct in the future;

C.    An award of Plaintiff Tate's attorneys' fees pursuant to 42 U.S.C. § 1988; and

D.    Any other relief which this Court may deem just and proper.

## Count VIII

### Claim Under 42 U.S.C. § 1983 for Retaliation in Violation of the First Amendment
### (Against Defendant Turner)

103.    Plaintiff Tate restates Paragraphs 1 through 102 as if fully set forth herein.

104.    Plaintiff Tate exercised his constitutionally protected right to speak out on matters of public concern.  Certain letters to the governor written and mailed by Mr. Tate on or around January 30, 2007 concerned Defendant Turner's deliberate indifference to Mr. Tate's safety and well-being and the lack of attention and efficacy of prison officials in dealing with known dangers to Mr. Tate and other inmates, despite repeated requests.  This lack of attention and deliberate indifference is a matter of public concern.

105.    Because these letters created a record of Defendant Turner's unconstitutional and illegal acts, Defendant Turner, motivated entirely by self-interest, retaliated against Plaintiff Tate by using his official influence to attempt to thwart Plaintiff Tate's requests for protection, and fomenting discord between Plaintiff Tate and the Conservative Vice Lords, a gang in the prison that had previously targeted Mr. Tate for violence.  Plaintiff Tate's letters to the governor were a

substantial motivating factor for Defendant Turner's retaliation, which violated Plaintiff Tate's rights under the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

WHEREFORE, Plaintiff Tate respectfully requests the following relief:

A.  Compensatory damages, in an amount to be determined, to sufficiently compensate Plaintiff Tate for the deprivation of his rights;

B.  Punitive damages to sanction Defendant Turner's retaliation and to deter Defendants and others from engaging in similarly unconstitutional conduct in the future;

C.  An award of Plaintiff Tate's attorneys' fees pursuant to 42 U.S.C. § 1988; and

D.  Any other relief which this Court may deem just and proper.

## Count IX

### Willful and Wanton Negligence

### (Against All Defendants)

106.  Plaintiff Tate restates Paragraphs 1 through 105 as if fully set forth herein.

107.  Defendants Stateville Officials, Roger E. Walker, and Terry L. McCann owed a duty to Plaintiff Tate to protect him from foreseeable dangers posed by other inmates and IDOC staff.

108.  Medical Staff Defendants owed Plaintiff Tate a duty to treat his known injuries and to determine the extent or existence of potentially unknown injuries.

109.  Defendants Stateville Officials, Roger E. Walker, and Terry L. McCann breached their duties by ignoring the dangers to Plaintiff Tate, failing to act to eliminate or dispel the dangers to Plaintiff Tate posed by his cellmates and prison conditions, and by deliberately perpetuating dangerous conditions and policies at Stateville Correctional Center.

110.     Medical Staff Defendants breached their duties by failing to treat Plaintiff Tate's known injuries suffered at the hands of his cellmates, failing to schedule this treatment for months and weeks after his suffering of those injuries, failing to examine the extent of those injuries, and failing to diagnose potentially unknown injuries to Plaintiff Tate.

111.     Defendants Stateville Officials, Roger E. Walker, Terry L. McCann, and Medical Staff Defendants acted with knowledge that their conduct posed a high probability of serious physical harm to Plaintiff Tate, and thus breached their duties willfully and wantonly.

112.     By breaching their duties to Plaintiff Tate, Defendants Stateville Officials, Roger E. Walker, and Terry L. McCann actually and proximately caused Plaintiff Tate's injuries.  The attacks Plaintiff Tate suffered at the hands of his cellmates were reasonably foreseeable consequences of the named Defendants' acts and omissions.

113.     By breaching their duties to Plaintiff Tate, Medical Staff Defendants actually and proximately caused Plaintiff Tate to suffer undue and avoidable pain by failing to treat his known injuries for a grossly unreasonable amount of time.

WHEREFORE, Plaintiff Tate respectfully requests the following relief:

A.     An injunction commanding IDOC to perform a thorough medical examination of Plaintiff Tate sufficient to identify any lasting injuries or conditions and to treat such injuries or conditions;

B.     Compensatory damages, in an amount to be determined, to compensate Plaintiff Tate for his injuries and emotional distress; and

C.     Any other relief which this Court may deem just and proper.

Respectfully Submitted,

CARL TATE

Date: July 27, 2009                    /s/ Monika M. Blacha_____

Monika M. Blacha
Christopher A. Weller
Andrew R. Josephson
Winston & Strawn LLP
35 West Wacker Drive
Chicago, Illinois 60601
tel: (312) 558-5600
fax: (312) 558-5700
mblacha@winston.com

## CERTIFICATE OF SERVICE

I, Monika M. Blacha, certify that on July 27, 2009, I electronically filed the foregoing **Amended Complaint** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following counsel (who also will be served directly via email):

Saira Alikhan
Office of the Illinois Attorney General
100 West Randolph Street, 13th Floor
Chicago, Illinois 60601
tel: (312) 814-3700
salikhan@atg.state.il.us

By: /s/Monika M. Blacha

Monika M. Blacha
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
tel: (312) 558-5600
fax: (312) 558-5700
mblacha@winston.com