**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CARL TATE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 08-cv-5664 |
| ) | |
| TERRY L. MCCANN, et al. ) | Judge Robert M. Dow, Jr. |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Carl Tate filed this action pursuant to 42 U.S.C. § 1983 against Warden Terry L. McCann, in his official capacity as Warden of Stateville Correctional Center, and various employees of Stateville. Plaintiff alleges that Defendants failed to protect him from assaults by other inmates, and failed to provide adequate medical care following the assaults, in violation of the Eighth and Fourteenth Amendments. Defendants Roger E. Walker ("Walker"), Terry McCann ("McCann"), Karen Rabideau ("Rabideau"), Ronald Meek ("Meek"), and Venita Wright ("Wright") filed a motion to dismiss, which the Court denied on January 26, 2010. Defendant Doctor Parthasarathi Ghosh moves to dismiss [67] Counts IV and IX. For the reasons stated below, the Court grants Defendant Ghosh's motion to dismiss [67].

**I.    Background**[1]

    **A.    Factual**

Tate is an inmate housed at the Pinckneyville Correctional Center. Tate was housed at the Stateville Correctional Center ("Stateville") during the events giving rise to this lawsuit.

---

[1] For purposes of Defendant's motion to dismiss, the Court assumes as true all well-pleaded allegations set forth in Plaintiff's amended complaint. See, *e.g.*, *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

Compl. ¶ 5.[2] McCann was the Warden of Stateville, Walker was the Director of the Illinois Department of Corrections, Meek was the Deputy Director of District 4 of the Illinois Department of Corrections, Rabideau was a placement officer at Stateville who approved all of Tate's cell assignments, and Wright was the Acting Health Care Administrator at Stateville. Defendant Ghosh was one of the treating physicians at Stateville, and Officer Leslie Turner, Sergeant Baldwin, and Lieutenant Buczkowski were officers at Stateville.

For a time at least, Tate was a member of a gang called the "Conservative Vice Lords" (the "CVL gang"). But in 1998, Tate was convicted of killing another CVL gang member—a member who outranked Tate. The result was an immediate death sentence that could be carried out by any member of the CVL gang, in addition to the punishment doled out by Illinois' criminal justice system. The Illinois Department of Corrections was aware of the threat: Tate's file shows that he was "flagged" by Internal Affairs as someone who should not be housed with members of the CVL gang. And in 2003, Tate was moved to a different facility because of the threat posed by CVL gang members housed at Stateville. But in 2006, the Illinois Department of Corrections sent Tate back to Stateville, a move which provoked a nearly immediate request by Tate (to Walker, the Illinois Department of Corrections Director) to be sent to another facility. Tate told Walker that his life would be in danger unless he was moved to a different facility, but Walker did not respond.

According to Tate, officials did more than merely not respond. Tate says that although "he was supposed to be in protective custody," he instead was placed in the general population where there were many members of the CVL gang. Compl. ¶ 28. And in October 2006, Tate was assigned to share a cell with a CVL gang member, Toussaint Daniels. Tate responded immediately by informing Sergeant Baldwin and Lieutenant Buczkowski that Tate was classified

---
[2] Citations to Plaintiff's First Amended Complaint [48] are given in the format "Compl. ¶ __."

as being in protective custody and that Toussaint Daniels had threatened him. According to Tate, the officers told him that he should "stop snitching" and learn how to fight. *Id.* ¶¶ 30-31.

On roughly October 11, 2006, "just as he warned various prison officials" of the danger to his safety by writing emergency grievances and letters in an attempt to be moved away from Toussaint Daniels, Tate was assaulted by Daniels and suffered "several serious physical injuries." Compl. ¶¶ 32-33. After that encounter, Tate was assigned a new cellmate, Matthew Foley, an Aryan Brotherhood gang member. (The assignment was made even though Tate is African-American. See *id.* ¶ 5.) In late November and into December 2006, Tate filed grievances and also informed Sergeant Buczkowski that Matthew Foley was threatening him; Buczkowski's response (again) was to tell Tate that Tate should stop snitching and "should fight like a man." *Id.* ¶¶ 37-38. Also in December, Tate wrote to Walker, renewing his request for a transfer or to be put in a protected cell—the letter said that Matthew Foley was threatening Tate's life and that the officers at the facility (Turner, Baldwin, and Buczkowski) were ignoring the danger and refusing to help him. *Id.* ¶ 39.

On December 27, 2006, Tate spoke to Turner, an officer with Internal Affairs, again warning of the risk that Matthew Foley posed and elucidating the reasons for his concerns, including that Foley's fellow Aryan Brotherhood gang members were yelling through the gallery that Foley should kill him. Tate was told not only to "stop being a coward," he was told to stop complaining, and Turner took no steps to investigate the danger posed by Foley. Compl. ¶¶ 40-43. That same day, Tate was brutally assaulted by Matthew Foley. During the assault, Tate was knocked unconscious and had his property stolen. Foley subsequently admitted during an interview that he had assaulted Tate. Although Foley was moved out of the cell, Turner refused to document evidence of Tate's injuries. Tate filed another grievance after this series of events

3

occurred (the complaint does not say whether the grievance related to the attack by Foley, the response by Turner, or both).

In January 2007, Tate wrote to Meek, the Deputy Director of the Illinois Department of Corrections, for help. Tate's effort to get into protective custody had been granted, but Tate was placed into a protective custody cell with another Aryan Brotherhood gang member. This other gang member, John Malinowski, was widely known as both a member of the Aryan Brotherhood and as a close friend of Matthew Foley. The same day that Tate was placed with Malinowski, Tate was assaulted by Malinowski. This led Tate to file another grievance, and no effort was made to separate Tate and Malinowski while the grievance was investigated. Apparently as part of that investigation, Malinowski met with Officer Turner. Malinowski requested a one-man cell and told Turner that he (Malinowski) would "beat, rape, or otherwise harm Plaintiff Tate or anyone else housed with him until he was celled alone." *Id.* ¶ 55-57. Malinowski repeated the threat to other officers. Still, Malinowski and Tate were not separated and Tate—seemingly falsely, although the complaint is not entirely clear—reported to prison officials that Malinowski made good on his threat and raped Tate. Turner still refused to move Malinowski. What is more, Turner, irked by Tate's grievances and letters to the governor, told Tate that he would "personally fight to have Mr. Tate's further requests for protective custody and transfer 'shut down.'" *Id.* ¶ 63.

Tate also alleges that he was denied medical care during the time period in which the assaults took place. After he was assaulted by Toussaint Daniels in October 2006, Tate filed a request to see the prison doctor for treatment of his injuries. Although Tate filed multiple such requests, he received no response (and no examination) during October, November, and December 2006. Tate was not examined until more than a week after the Foley assault in

4

January 2007. According to Tate's allegations, both Dr. Ghosh, the Stateville Medical Director, and Vanessa Wright, the Acting Health Care Administrator who also received word that Tate's injuries were left untreated, were aware of Tate's requests for medical treatment but ignored the requests.

**B.     Procedural**

On October 3, 2008, Tate filed his initial complaint, with the assistance of counsel. While incarcerated, Tate claims that he was unable to ascertain the identity of the medical staff members responsible for handling his requests for treatments; accordingly, those defendants were named as John and Jane Doe defendants. On December 23, 2008, Tate served written interrogatories on Defendants Walker and McCann, seeking the identity of all medical staff members at Stateville who treated Tate or met with him regarding his injuries during the relevant time period. On February 6, 2009, Tate received a response to the Interrogatories. Although the documents included a reference to Dr. Ghosh, Tate claims that the response was insufficient to allow Tate to identify Ghosh as one of the John Doe defendants. On March 12, 2009, Plaintiff's counsel received Tate's master file, and on May 14, 2009, counsel received Tate's medical records. Tate claims that these medical records were the first indication that his counsel had that Dr. Ghosh was the medical director at Stateville. Tate then served supplemental interrogatories on May 20, to which he received responses on June 29.

On July 27, 2009, Tate filed his amended complaint, naming Dr. Ghosh for the first time. Tate's amended complaint comprises nine counts, only two of which are relevant to this motion to dismiss. Count IV names Wright and Ghosh and alleges that the two were deliberately indifferent to Tate's medical needs when they ignored his requests for medical assistance. Count

IX names all Defendants, including Ghosh, and alleges that their actions constitute willful and wanton negligence under Illinois state law.

## II.     Legal Standard on a Rule 12(b)(6) Motion

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the case.  See *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990).  To survive a Rule 12(b)(6) motion to dismiss, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).  "Detailed factual allegations" are not required, but the plaintiff must allege facts that, when "accepted as true, * * * 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* --- U.S. ----, ----, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 555).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949.  "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  *Twombly*, 550 U.S. at 563.  The Court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom.  See *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005).

**III. Analysis**

**A. Statute of Limitations**

The statute of limitations is an affirmative defense. Because complaints are not required to anticipate affirmative defenses, dismissal under Rule 12(b)(6) on statute of limitations grounds is considered "irregular." *United States v. Northern Trust Co.*, 372 F.3d 886, 888 (7th Cir. 2004). However, dismissal is appropriate where a plaintiff pleads himself out of court by establishing that a defendant is entitled to a statute of limitations defense. *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005) (motion to dismiss appropriate where "complaint plainly reveals that an action is untimely under the governing statute of limitations"); *U.S. Gypsum Co. v. Ind. Gas Co., Inc.*, 350 F.3d 623, 626 (7th Cir. 2003) ("a litigant may plead itself out of court by alleging (and thus admitting) the ingredients of a defense"). When the face of the complaint affirmatively indicates that the time limit for bringing the claim has passed, the plaintiff may not escape the statute of limitations by saying nothing. See *Kathaur SDN BHD v. Sternberg*, 149 F.3d 659, 670 n.14 (7th Cir. 1998).

Defendant Ghosh seeks dismissal because he was not named as a defendant until after the statute of limitations on Plaintiff's § 1983 claim had expired. Actions to enforce constitutional rights under § 1983 must be brought within the two-year time period prescribed by Illinois' personal injury statute of limitations. See *Owens v. Okure*, 488 U.S. 235, 240-41, 249-50, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989) (quoting and clarifying *Wilson v. Garcia,* 471 U.S. 261, 280, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985)); 735 ILCS 5/13-202; *Jenkins v. Vill. of Maywood*, 506 F.3d 622, 623 (7th Cir. 2007). Similarly, a two-year statute of limitations applies to Plaintiff's state law claim of willful and wanton medical negligence against Dr. Ghosh. See 735 ILCS 5/13-212. Amended suits, which add new parties after the two-year period, are untimely and will

be dismissed unless relation back applies (see FED.R.CIV.P. 15(c)), or the running of the statute of limitations is tolled. See, *e.g.*, *Donald v. Cook County Sheriff's Dept.,* 95 F.3d 548, 561-2 (7th Cir. 1996).

The Clerk's Office received Tate's original complaint on October 3, 2008, and Tate's amended complaint, which named Defendant Ghosh, on July 27, 2009. Tate's claims are based on Defendants' alleged failure to protect him from assaults in October and December 2006 and to provide him with adequate medical care in the days and weeks following. Therefore, his claims against Dr. Ghosh accrued no later than January 2007. Although the Court determines that Plaintiff filed his § 1983 claim within the applicable statute of limitations, he did not name Defendant Ghosh until he filed his amended complaint on July 27, 2009. Thus, his § 1983 claim against Ghosh survives only if the filing of the amended complaint relates back to the filing of the original complaint under Federal Rule of Civil Procedure 15(c) or equitable tolling applies.

1. *Relation back*

The Seventh Circuit has long interpreted the third prong of Rule 15(c)(1) "to permit an amendment to relate back to the original complaint only where there has been an error made concerning the identity of the proper party and where that party is chargeable with knowledge of the mistake." *King v. One Unknown Fed. Corr. Officer*, 201 F.3d 910, 914 (7th Cir. 2000) (internal quotation marks omitted) (citing *Baskin v. City of Des Plaines*, 138 F.3d 701, 704 (7th Cir. 1998)); *Worthington v. Wilson*, 8 F.3d 1253, 1256 (7th Cir. 1993); *Wood v. Worachek*, 618 F.2d 1225, 1230 (7th Cir. 1980)). The Seventh Circuit has "repeatedly reiterated that 'relation back' on grounds of 'mistake concerning the identity of the proper party' does not apply where the plaintiff simply lacks knowledge of the proper defendant." *Hall v. Norfolk Southern Ry. Co*, 469 F.3d 590, 595 (7th Cir. 2006); see also *Baskin*, 138 F.3d at 704. The Court has emphasized

that Rule 15(c)(1) contains a "mistake" requirement that is independent from the determination of whether the new party knew that the action would be brought against it. *King*, 201 F.3d at 914 (citing *Baskin*, 138 F.3d at 704; *Worthington*, 8 F.3d at 1257; *Wood*, 618 F.2d at 1230). In fact, "in the absence of a mistake in the identification of the proper party, it is irrelevant for purposes of [Rule 15(c)(1)] whether or not the purported substitute party knew or should have known that the action would have been brought against him." *Baskin*, 138 F.3d at 704 (citing *Wood*, 618 F.2d at 1230).

Tate has the burden of determining who is liable for his injuries and of doing so before the statute of limitations runs out. *Hall*, 496 F.3d at 596; see also *Gavin v. AT&T Corp.*, 2008 WL 400697, at *13 (N.D. Ill. February 12, 2008). As summed up by the Seventh Circuit:

> Whether a plaintiff names a fictitious defendant like "John Doe" because he does not know who harmed him or names an actual – but nonliable – [ ] company because he does not know which of two companies is responsible for his injuries, he has not made a "mistake" concerning "identity" within the meaning of [Rule 15(c)(1)]. He simply lacks knowledge of the proper party to sue. It is the plaintiff's responsibility to determine the proper party to sue and to do so before the statute of limitations expires. A plaintiff's ignorance or misunderstanding about who is liable for his injury is not a "mistake" as to the defendant's "identity."

*Hall*, 496 F.3d at 596.

In the present case, as in *Hall*, Tate filed his original complaint almost two years after the first event giving rise to his claims occurred. Plaintiff's failure to determine the names of the medical staff members who might be liable suggests lack of knowledge of the proper defendants, rather than a mistake in identity, at least as those concepts are understood in this circuit's case law. As the court emphasized in *Hall*, for at least a quarter of a century, the Seventh Circuit consistently has upheld a "narrower" view of what constitutes a Rule 15(c) "mistake." 496 F.3d at 596. Under that construction of Rule 15(c), it is the plaintiff's burden to identify the proper

party within the applicable limitations period, and there is no recourse under the relation back doctrine if the plaintiff's "mistake" amounts to a lack of knowledge of the proper party at the time the complaint is filed and the plaintiff does not seek leave to amend the complaint to remedy that "mistake" until after the expiration of the limitations period. See *Jackson v. Kotter*, 541 F.3d 688, 696 (7th Cir. 2008) ("[a] plaintiff cannot, after the statute of limitations period, name as defendants individuals that were unidentified at the time of the original pleading. Not knowing a defendant's name is not a mistake under Rule 15.").

### 2. *Equitable tolling*

Tate contends that even if the Court does not apply the relation back doctrine, he nonetheless is entitled to equitable tolling under state law. Where a limitations period is equitably tolled, the statute of limitations ceases to run for a period of time. See, *e.g.*, *IPF Recovery Co. v. Ill. Ins. Gaur. Fund*, 826 N.E.2d 943, 947-48 & n.5 (Ill. App. Ct. 2005) ("equitable tolling is an exception to the general rule that a statute of limitations is not tolled absent authorization from a statute"). Although the accrual analysis in a § 1983 case is governed by federal law, the tolling analysis is governed by state law. *Savory v. Lyons*, 469 F.3d 667, 672 (7th Cir. 2006); *Shropshear v. Corp. Counsel of the City of Chicago*, 275 F.3d 593, 596 (7th Cir. 2001) (establishing that, in this circuit, "the state, rather than the federal, doctrine of equitable tolling governs cases of borrowing").

Generally, a statute of limitations may be tolled under one of two common law doctrines: equitable estoppel or equitable tolling. *Williams v. Sims*, 390 F.3d 958, 960 (7th Cir. 2004). The doctrine of equitable estoppel applies in cases where the defendant somehow prevents the plaintiff from suing within the statutory period. *Id.* Equitable tolling permits a plaintiff to file suit after the expiration of the applicable statute of limitations "if despite the exercise of all due

diligence he is unable to obtain vital information bearing on the existence of his claim." *Shropshear*, 275 F.3d at 595. "Equitable tolling does not require that the defendant have borne any responsibility for the plaintiff's having missed the deadline." *Fidelity Nat'l Title Insurance Co. of New York v. Howard Savings Bank*, 436 F.3d 836, 839 (7th Cir. 2006). The Seventh Circuit has recognized that "[a]pplication of the doctrine is appropriate, for example, when a plaintiff has 'been injured and known he was injured, at which point the statute of limitations began to run, yet [has] been unable despite all reasonable diligence to learn * * * the wrongdoer's identity.'" *Donald v. Cook County Sheriff's Dept.*, 95 F.3d 548, 562 (7th Cir. 1996) (reversing district court's dismissal of *pro se* prisoner's § 1983 suit because the court determined that the trial judge failed to assist prisoner; trial judge should have permitted plaintiff to file an amended complaint because plaintiff satisfied the mistake requirement for relation back under Rule 15(c), when he named only the administrative body, and not the individual officers, in his initial complaint) (quoting *Singletary v. Continental Illinois Nat'l Bank and Trust Co. of Chicago,* 9 F.3d 1236 (7th Cir. 1993)); see also *Springman v. AIG Marketing, Inc.*, 523 F.3d 685, 689 (7th Cir. 2008).

Here, Tate relies on the doctrine of equitable tolling, arguing that he was unable to learn the name of Defendant Ghosh despite exercising reasonable diligence because he was incarcerated and because Defendants were slow to respond to discovery requests. As noted above, Illinois' equitable tolling doctrine applies, and the scope of the equitable tolling doctrine in Illinois far from clear. Indeed, the Seventh Circuit has "expressed uncertainty that the doctrine of equitable tolling even exists in Illinois." *Shropshear*, 275 F.3d at 596. As Judge Posner noted in *Fidelity National*, "it is still unresolved whether Illinois recognizes equitable tolling [because t]he Illinois cases that mention the term seem to mean by it equitable estoppel."

436 F.3d at 839. See also *Griffin v. Willoughby*, 867 N.E.2d 1007, 1016 (Ill. Ct. App. 4th Dist. 2006) (noting the apparently disparate formulations of equitable tolling articulated by the Illinois Supreme Court and Seventh Circuit). Although Judge Posner opined in *Fidelity National* that Illinois would accept the "commonplace" and "sensible" doctrine of equitable tolling (436 F.3d at 839), there is no need to resolve whether Illinois accepts the equitable tolling doctrine as it has been articulated by the Seventh Circuit. Even under the Seventh Circuit's potentially more generous formulation of the doctrine, Tate's equitable tolling argument fails.

Tate has not alleged that any Defendants actively misled him or that he timely asserted his rights mistakenly in the wrong forum. *Ciers v. O.L. Schmidt Barge Lines, Inc.*, 675 N.E.2d 210, 214 (Ill. App. Ct. 1996) ("[e]quitable tolling may be appropriate if defendant has actively misled plaintiff; plaintiff 'in some extraordinary way' has been prevented from asserting his rights; or plaintiff has timely asserted his rights mistakenly in the wrong forum."). Rather, Tate appears to rest his equitable tolling argument on the notion that he "in some extraordinary way" has been prevented from asserting his rights. In Seventh Circuit parlance, Tate is entitled to equitable tolling only if he can demonstrate "all due diligence" in seeking out Ghosh's identity. *Shropshear*, 275 F.3d at 595. As noted above, Tate's claims accrued no later than January 2007. and, given the allegations in his amended complaint, Tate clearly would have been aware that he had been injured at that time. Yet Tate waited until October 3, 2008 – just three months before the statute of limitations on his claims was to expire (and almost two years after the first assault and subsequent failure to provide medical care occurred) – to file suit. Tate does not specify what attempts he made to identify the medical staff allegedly responsible for his injuries during the two years between the first assault and the filing of the original complaint (or the twenty-one months between the last allegation of denial of medical care and the filing of the original

complaint). Rather, Tate argues that he conducted "pre-complaint investigations entirely *pro se*," before he secured counsel in September 2008, and that his status as a prisoner alone justifies the application of the equitable tolling doctrine.

The Court respectfully disagrees. While the Court recognizes that *pro se* inmates may be at a particular disadvantage in trying to identify the individuals responsible for their injuries (*White v. Cooper*, 55 F. Supp. 2d 848, 856 (N.D. Ill. 1999)), that circumstance does not excuse inmates from exercising reasonable diligence. Had Tate exercised more diligence in filing his suit – instead of waiting until the limitations period was drawing to a close – he could have sought discovery earlier. He also might have benefitted from the availability of Court intervention to facilitate the discovery process[3] and even could have applied for appointment of counsel.

By the time that counsel filed a complaint on Tate's behalf in September 2008, the limitations clock was rapidly running out. By not initiating his lawsuit earlier, Tate obviously put counsel behind the proverbial "eight-ball" in terms of identifying potential claims and defendants within the remainder of the limitations period. In essence, Plaintiff and his attorneys had from September 2008 until January 2009, to determine the identity of the unknown defendants. Still, no action was taken to ascertain the identity of any additional individual defendants from the time that Plaintiff secured counsel in September 2008 until December 23, 2008, when the first written discovery was propounded to the Illinois Department of Corrections. To be sure, Plaintiff's own lack of diligence in waiting until late in the limitations period to file suit in the first place made the circumstances more exigent; however, "all due diligence" encompasses determining when the statute of limitations will run and following through on all of

---

[3] In *pro se* prisoner cases, this Court frequently enters in the early stages of the litigation a referral to the Magistrate Judge for all discovery supervision.

the steps that reasonably can be taken prior to that date.  Requesting additional time for service of the complaint (which counsel in this case did) cures some procedural hurdles found in the Federal Rules of Civil Procedure, but it does not toll the statute of limitations.  While the Court acknowledges (and indeed appreciates) the efforts of attorneys who take on prisoner litigation (whether they are court-appointed or privately-retained), the Court is not empowered to extend the principles of equitable tolling to what is at best a garden variety claim of excusable neglect that must be laid principally at the feet of Tate himself for not filing a lawsuit until long after the events giving rise to his claims occurred.  *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 96 (1990) ("principles of equitable tolling * * * do not extend to what is at best a garden variety claim of excusable neglect").

Plaintiff relies heavily on *White v. Cooper*, 55 F. Supp. 2d 848 (N.D. Ill. 1999), but the facts of that case clearly are distinguishable.  In *White*, the court found that an incarcerated plaintiff was entitled to equitable tolling where he filed a *pro se* complaint less than four months after the incident in which he was injured, unsuccessfully sought pre-trial discovery, and – despite multiple motions for appointment of counsel – was not appointed counsel until more than two years after filing his complaint (and, notably, after the statute of limitations had completely run).  By contrast, here, Plaintiff had counsel when he filed his initial complaint, counsel that was retained almost four months prior to the running of the applicable statute of limitations.  Although Plaintiff's counsel sought discovery in this case, Plaintiff's own lack of diligence in waiting until late in the limitations period to file suit in the first place, coupled with counsel's failure to seek expedited or even emergency relief from the Court given the impending limitations issues, does not compel a finding similar to that in *White*.

The Court is aware of, and often employs, the Seventh Circuit's "extra measure of grace" that sometimes is accorded to incarcerated litigants (see *Hall*, 469 F.3d at 597; *Donald*, 95 F.3d at 556). However, the Court does not believe that *Donald v. Cook County Sheriff's Department* or *White v. Cooper* stands for the proposition that all prisoner litigants (and especially not those who secure counsel prior to the running of the statute of limitations) are entitled to equitable tolling because, by virtue of the fact of their incarceration, they "in some extraordinary way" are prevented from asserting their rights. Tate has not alleged that he exercised reasonable diligence to properly identify the appropriate medical staff while he was in prison and that he was thwarted or misled all along the way. See, *e.g.*, *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451 (7th Cir. 1990) (observing that equitable tolling may be available where "despite all due diligence," a plaintiff is unable to obtain vital information bearing on the existence of his claim). To the contrary, Plaintiff waited until near the end of his limitations period to file his lawsuit, even though his allegations reference brutal beatings and substantial injuries, of which he was certainly aware of at the time that the incidents took place. In essence, then, Plaintiff asks the Court to view his status as a prisoner alone as sufficient to justify equitable tolling. Given Seventh Circuit precedent, the Court cannot make the required leap to justify relation back or equitable tolling under these circumstances. See, *e.g.*, *King v. One Unknown Fed. Corr. Officer*, 201 F.3d 910, 914-15 (7th Cir. 2000) (refusing to relax the requirements for relation back when *pro se* prisoner filed complaint just before the expiration of the statute of limitations, but the complaint failed to name the proper defendant responsible for the plaintiff's injuries).

## IV. Conclusion

For the reasons stated above, the Court grants Defendant Ghosh's motion to dismiss [67].

Dated:  June 21, 2010

_____
Robert M. Dow, Jr.
United States District Judge